FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2018 JAN 31   AM 11:03

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 8:18cv258T36 MAP |
| v. | ) |
| BRETT L. CLEMONS, | ) |
| Defendant. | ) |

## COMPLAINT

The United States of America brings this action to collect outstanding civil penalties assessed against Defendant Brett L. Clemons for his willful failure to timely report his financial interest in foreign bank accounts, as required by 31 U.S.C. § 5314 and its implementing regulations, accrued interest on such penalties, late payment penalties, and associated fees. The United States of America, through its undersigned counsel, complains and alleges as follows:

### JURISDICTION AND VENUE

1. The United States brings this suit under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C), at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

2. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute, the United States is the plaintiff, and the action seeks recovery or enforcement of civil penalties.

3. Venue is proper in this district under 28 U.S.C. § 1391 because Clemons is domiciled in this district and resides in Hillsborough County, Florida.

**REGULATORY BACKGROUND REGARDING
THE DUTY TO REPORT FOREIGN FINANCIAL ACCOUNTS**

4. Section 5314 of Title 31 of the U.S. Code authorizes the Secretary of the Treasury to require United States citizens to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists." 31 C.F.R. § 1010.350(a).

5. To fulfill this requirement, a person must file a Form TD-F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." *See id.* During the periods at issue in this case, an FBAR was due by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 1010.306(c). An FBAR requires the taxpayer to disclose, among other things, the maximum value of each foreign account during the calendar year reported, the type of account, the name of the financial institution in which the account is held, the account number, and the mailing address of the financial institution in which the account is held. *See* Form TD-F 90-221.

6. Schedule B is an attachment to the individual federal income tax return (Form 1040) that is used for reporting, among other things, interest and dividend income, as well as any financial interest in or signature or other authority over financial accounts located in foreign countries. Schedule B refers to the FBAR filing requirement and alerts the taxpayer that if he or she had an interest in or signature or other authority over a financial account located in a foreign country the taxpayer should see the instructions for the exceptions and filing requirements for Form TD-F 90-22.1.

7. Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for willful failure to comply with the reporting requirements of § 5314. Specifically, § 5321(a)(5)(C) provides for a willful penalty equal to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

8. The penalty set forth under 31 U.S.C. § 5321(a)(5)(C) is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.

## FACTUAL BACKGROUND

**A. Clemons' Work History**

9. At all relevant times, Clemons was a United States citizen working in the field of software programming and engineering.

10. From 2003 to 2006, Clemons worked from the United States as a contractor for Entity Solutions, an Australian company. Entity Solutions paid Clemons to perform work for Hewlett Packard Australia.

11. Clemons worked in Europe from December 2007 until September 2009. In 2008, Clemons spent most of his time in Germany and in 2009, Clemons spent most of his time in the Netherlands.

**B. Clemons' Foreign Financial Accounts**

   **i. The UBS Account**

12. In 2001, Clemons opened a bank account at the Union Bank of Switzerland AG ("UBS"), ending in 1624 ("the UBS Account"). He waived the right to invest in U.S. securities, which would have generated Forms 1099-B or 1099-DIV that would have put the IRS on notice of Clemons' foreign investments. Clemons also directed UBS to hold all correspondence to him.

13. At all relevant times, Clemons was the sole signatory and beneficial owner of the UBS Account.

14. When Clemons worked for Entity Solutions from 2003 to 2006, he directed the company to deposit his compensation into the UBS Account. Entity Solutions deposited a total of $775,392 into the UBS Account. Clemons did not report this compensation on his federal income tax returns for tax years 2003 through 2006 as either taxable or tax-excludable income.

15. In 2008, UBS stopped accepting business from U.S. citizens, and Clemons closed the UBS Account that fall.

### ii. The Dresdner Account

16. By letter dated October 31, 2008, Clemons instructed UBS to close his account and to transfer all of his assets to an account he opened at Dresdner Bank (Switzerland) AG ("Dresdner") ending in 7619 ("the Dresdner Account"). Dresdner was a Swiss subsidiary of the German company Dresdner Bank. Paperwork for the Dresdner Account includes "Switzerland" in the institution's name and provides that the institution's address is in Switzerland.

17. At all relevant times, Clemons was the sole signatory and beneficial owner of the Dresdner Account.

### iii. The LGT Account

18. LGT Bank Switzerland AG ("LGT") acquired Dresdner at the end of 2009. LGT's parent company was a Liechtenstein-based bank. In 2010, following LGT's acquisition of Dresdner, Clemons began using a new or renumbered LGT account ending in 5.042 ("the LGT Account").

19. At all relevant times, Clemons was the sole signatory and beneficial owner of the LGT Account.

4

### iv. The Pirmasens Account

20. In 2008, Clemons opened an account at German Bank VR-Bank Pirmasens eG ("Pirmasens") ending in 7010 ("the Pirmasens Account").

21. At all relevant times, Clemons was the sole signatory and beneficial owner of the Pirmasens Account.

22. Clemons closed the Pirmasens Account at the end of 2008.

### v. The ABN-AMRO Account

23. In 2009, Clemons opened an account at Dutch Bank ABN-AMRO ending in 5.669 ("the ABN-AMRO Account").

24. At all relevant times, Clemons was the sole signatory and beneficial owner of the ABN-AMRO Account.

### C. Clemons' Failure to Timely Report His Interest in His Foreign Bank Accounts

25. For calendar year 2003:

   a. The UBS Account had a maximum balance exceeding $550,000.

   b. Clemons was required to disclose that he had an interest in a Swiss bank account in a Schedule B to his 2003 federal income tax return (Form 1040); however, he did not attach a Schedule B to his return.

   c. Clemons was required to file an FBAR by June 30, 2004, reporting his interest in the UBS Account, but he never filed an FBAR for 2003.

26. For calendar year 2004:

   a. The UBS Account had a maximum balance exceeding $850,000.

  b. Clemons was required to disclose that he had an interest in a Swiss bank account in a Schedule B to his 2004 federal income tax return; however, he did not attach a Schedule B to his return.

  c. Clemons was required to file an FBAR by June 30, 2005, reporting his interest in the UBS Account, but he never filed an FBAR for 2004.

27. For calendar year 2005:

  a. The UBS Account had a maximum balance exceeding $1 million.

  b. Clemons was required to disclose that he had an interest in a Swiss bank account in a Schedule B to his 2005 federal income tax return. Although Clemons attached a Schedule B to his 2005 return, he checked "No" in response to the question that asked whether he had an interest in or authority over a foreign financial account.

  c. Clemons was required to file an FBAR by June 30, 2006, reporting his interest in the UBS Account, but he failed to do so. Only after the IRS began investigating Clemons for FBAR and income tax violations did Clemons late-file his 2005 FBAR on July 29, 2011. In his late-filed 2005 FBAR, Clemons reported that the UBS Account had a maximum balance of $956,017.44 in 2005.

28. For calendar year 2006:

  a. The UBS Account had a maximum balance exceeding $1.1 million.

  b. Clemons was required to disclose that he had an interest in a Swiss bank account in a Schedule B to his 2006 federal income tax return. Although Clemons attached a Schedule B to his 2006 return, he checked "No" in response to the question that asked whether he had an interest in or authority over a foreign financial account.

      c.      Clemons was required to file an FBAR by June 30, 2007, reporting his interest in the UBS Account, but he failed to do so. Clemons late-filed his 2006 FBAR on July 29, 2011. In his late-filed 2006 FBAR, Clemons reported that the UBS Account had a maximum balance of $537,185.44 in 2006.

    29.    For calendar year 2007:

      a.      The UBS Account had a maximum balance exceeding $900,000.

      b.      Clemons was required to disclose that he had an interest in a Swiss bank account in a Schedule B to his 2007 federal income tax return. Although Clemons attached a Schedule B to his 2007 return, he checked "No" in response to the question that asked whether he had an interest in or authority over a foreign financial account.

      c.      Clemons was required to file an FBAR by June 30, 2008, reporting his interest in the UBS Account, but he failed to do so. Clemons late-filed his 2007 FBAR on July 29, 2011. In his late-filed 2007 FBAR, Clemons reported that the UBS Account had a maximum value of $537,185.44 in 2007.

    30.    For calendar year 2008:

      a.      The UBS Account had a maximum balance exceeding $750,000.

      b.      The Dresdner Account had a maximum balance exceeding $600,000.

      c.      The Pirmasens Account had a maximum balance exceeding $20,000.

      d.      Clemons was required to disclose that he had an interest in two Swiss bank accounts (UBS and Dresdner) and the German bank account (Pirmasens) in a Schedule B to his 2008 federal income tax return. Clemons attached a Schedule B to his 2008 federal income tax return and checked "Yes" when asked whether he had an interest in or authority over a foreign financial account. He reported in the Schedule B that he had an interest in financial

accounts in Germany and the Netherlands. Clemons did not report that he had any accounts in Switzerland.

    e.    Clemons was required to file an FBAR by June 30, 2009, reporting his interest in the UBS Account, the Dresdner Account, and the Pirmasens Account, but failed to do so. Clemons late-filed his 2008 FBAR on July 29, 2011, reporting the Dresdner Account (but listing an address in Germany instead of Switzerland and failing to disclose an account number) and the Pirmasens Account. Clemons did not disclose the UBS Account in his late-filed 2008 FBAR. The late-filed FBAR reported that in 2008 the Dresdner Account had a maximum value of $490,185.44 and the Pirmasens Account had a maximum value of $16,218.41.

31.    For calendar year 2009:

    a.    The Dresdner Account had a maximum balance exceeding $550,000.

    b.    The ABN-AMRO Account had a maximum balance exceeding $15,000.

    c.    Clemons was required to disclose that he had an interest in a Swiss bank account (Dresdner) and a Dutch bank account (ABN-AMRO) in a Schedule B to his 2009 federal income tax return. He attached a Schedule B to his 2009 return and checked "Yes" when asked whether he had an interest in or authority over a foreign financial account, reporting that he had an account in the Netherlands. He did not report that he had an account in Switzerland (the location of the Dresdner Account).

    d.    Clemons was required to file an FBAR by June 30, 2010, reporting his interest in the Dresdner Account and the ABN-AMRO Account, but failed to do so. Clemons late-filed his 2009 FBAR on July 29, 2011, reporting the Dresdner Account (but listing an address in Germany instead of Switzerland and failing to disclose an account number) and the ABN-AMRO Account. In the late-filed 2009 FBAR, Clemons reported that the Dresdner

Account had a maximum value of $448,770 and the ABN-AMRO Account had a maximum value of $10,881.32.

32. For calendar year 2010:

    a. The LGT Account had a maximum balance exceeding $500,000.

    b. The ABN-AMRO Account had a maximum balance exceeding $6,000.

    c. Clemons was required to disclose that he had an interest in a Swiss bank account (LGT) and a Dutch bank account (ABN-AMRO) in a Schedule B to his 2010 federal income tax return. He attached a Schedule B to his 2010 return and checked "Yes" when asked whether he had an interest in or authority over a foreign financial account, reporting that he had an account in Germany. He did not report that he had an account in Switzerland (the location of the LGT Account) or in the Netherlands (the location of the ABN-AMRO Account).

    d. Clemons was required to file an FBAR by June 30, 2011, reporting his interest in the LGT Account and the ABN-AMRO Account, but failed to do so. Clemons late-filed his 2010 FBAR on July 29, 2011, reporting the Dresdner Account (which had closed in 2009) and the ABN-AMRO Account. According to the late-filed FBAR, in 2010, the Dresdner Account had a maximum value of $448,770, and the ABN-AMRO Account had a maximum value of $10,881.32.

**CLAIM FOR RELIEF**
**(Reduce FBAR Penalties to Judgment Pursuant to 31 U.S.C. § 5231(a)(5))**

A. **Clemons' Liability for the FBAR Penalties for 2008**

33. In 2008 and 2009, Clemons was a United States citizen and was subject to the jurisdiction of the United States within the meaning of 31 C.F.R. § 1010.350.

9

34. In 2008, Clemons had an interest in at least three foreign bank accounts (the UBS Account, the Dresdner Account, and the Primasens Account) in which the aggregate balance exceeded $10,000.

35. Clemons was required to report to the United States his interest in the UBS Account, the Dresdner Account, and the Primasens Account for 2008 by submitting an FBAR on or before June 30, 2009.

36. Clemons had actual or constructive knowledge of his obligation to file an FBAR for 2008 for the UBS Account, the Dresdner Account, and the Primasens Account.

37. Despite such knowledge, Clemons did not submit the FBAR for the 2008 calendar year by June 30, 2009. Clemons' failure to timely file the FBAR was willful within the meaning of 31 U.S.C. § 5231(a)(5).

38. On December 26, 2014, Clemons consented to extend the statute of limitations for the assessment of FBAR penalties for 2008 to June 30, 2016.

39. On May 10, 2016, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321 and within six years of Clemons' failure to timely file the 2008 FBAR (plus the signed extension of time to assess agreed to by Clemons), assessed two FBAR penalties against Clemons for 2008. The IRS assessed an FBAR penalty against Clemons in the amount of $100,000 due to his willful failure to timely file a 2008 FBAR disclosing his interest in the UBS account. In addition, the IRS assessed a penalty against Clemons in the amount of $5,000 for his willful failure to timely submit a 2008 FBAR disclosing his interest in the Primasens Account.

40. A delegate of the Secretary of the Treasury sent Clemons notice of the assessment of the 2008 FBAR penalties and demand for payment.

41. Despite the notice and demand for payment, Clemons has failed to pay the penalties assessed against him. As a result, interest and statutory additions continue to accrue.

### B. Clemons' Liability for the FBAR Penalties for 2009

42. In 2009 and 2010, Clemons was a United States citizen and was subject to the jurisdiction of the United States within the meaning of 31 C.F.R. § 1010.350.

43. In 2009, Clemons had an interest in at least two foreign bank accounts (the Dresdner Account and the ABN-AMRO Account) in which the aggregate balance exceeded $10,000.

44. Clemons was required to report to the United States his interest in the foreign bank accounts for the 2009 calendar year by submitting an FBAR on or before June 30, 2010.

45. Clemons had actual or constructive knowledge of his obligation to file an FBAR for 2009 for the Dresdner Account and the ABN-AMRO Account.

46. Despite such knowledge, Clemons did not submit an FBAR for the 2009 calendar year by June 30, 2010. Clemons' failure to timely file the 2009 FBAR was willful within the meaning of 31 U.S.C. § 5231(a)(5).

47. On May 10, 2016, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321 and within six years of Clemons' failure to timely file the 2009 FBAR, assessed two FBAR penalties against Clemons for calendar year 2009. The IRS assessed an FBAR penalty against Clemons in the amount of $100,000 for his willful failure to timely submit an FBAR for the 2009 calendar year disclosing his interest in the Dresdner Account. The IRS assessed a second FBAR penalty against Clemons in the amount of $5,000 for his willful failure to timely submit an FBAR for the 2009 calendar year disclosing his interest in the ABN-AMRO Account.

48. A delegate of the Secretary of the Treasury sent Clemons notice of the assessment of the 2009 FBAR penalties and demand for payment.

49. Despite the notice and demand for payment, Clemons has failed to pay the penalties assessed against him. As a result, interest and statutory additions continue to accrue.

### C. Clemons' Liability for the FBAR Penalties for 2010

50. In 2010 and 2011, Clemons was a United States citizen and was subject to the jurisdiction of the United States within the meaning of 31 C.F.R. § 1010.350.

51. In 2010, Clemons had an interest in at least two foreign bank accounts (the LGT Account and the ABN-AMRO Account) in which the aggregate balance exceeded $10,000.

52. Clemons was required to report to the United States his interest in the foreign bank accounts for the 2010 calendar year by submitting an FBAR on or before June 30, 2011.

53. Clemons had actual or constructive knowledge of his obligation to file an FBAR for 2010 for the LGT Account and the ABN-AMRO Account.

54. Despite such knowledge, Clemons did not submit the FBAR for the 2010 calendar year by June 30, 2011. Clemons' failure to timely file the FBAR with regard to the 2010 calendar year was willful within the meaning of 31 U.S.C. § 5231(a)(5).

55. On May 10, 2016, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321 and within six years of Clemons' failure to timely file the 2010 FBAR, assessed two FBAR penalties against Clemons for calendar year 2010. The first FBAR penalty assessed against Clemons was in the amount of $100,000 for his willful failure to timely submit an FBAR for the year ending December 31, 2010, disclosing his interest in the LGT Account. The second FBAR penalty assessed against Clemons was in the amount of $5,000 for his willful

failure to timely submit an FBAR for the year ending December 31, 2010, disclosing his interest in the ABN-AMRO Account.

56. A delegate of the Secretary of the Treasury sent Clemons notice of the assessment of the 2010 FBAR penalties and demand for payment.

57. Despite the notice and demand for payment, Clemons has failed to pay the penalties assessed against him. As a result, interest and statutory additions continue to accrue.

**D.   Amounts Due and Owing to the United States**

58. The United States may bring suit to recover the FBAR penalties assessed under 31 U.S.C. § 5321(a) at any time before the end of the two year period beginning on the date the penalty was assessed. 31 U.S.C. § 5321(b)(2). This action is brought within the two year limitations specified in § 5321(b)(2).

59. As discussed above in paragraphs 39, 47, and 55, the IRS, pursuant to 31 U.S.C. § 5321, assessed six FBAR penalties against Clemons for calendar years 2008 through 2010 totaling $315,000.

60. In addition, the IRS, pursuant to 31 U.S.C. § 3717(e)(2), assessed penalties against Clemons for his failure to timely pay the above-referenced assessed FBAR penalties in the amount of $23,006.17. The appropriate official will continue to assess penalties pursuant to § 3717(e)(2) as they continue to accrue.

61. Further, the Bureau of the Fiscal Service incurred fees of $17.00 trying to collect Clemons' assessed FBAR liabilities for 2008 through 2010. Pursuant to 31 U.S.C. § 3717(e)(1), the United States is entitled to recover charges assessed against Clemons to cover collection-related costs of processing and handling his outstanding FBAR liabilities.

62. Clemons owes the United States $337,041.32 for the above-referenced assessed FBAR penalties, penalties for late payment, and fees, plus accrued interest as of January 10, 2018. Additional amounts continue to accrue as provided by law.

WHEREFORE, the United States of America requests that the Court:

A. Enter judgment against Brett Clemons and in favor of the United States in the amount of $337,041.32 for the FBAR penalties assessed against him for calendar years 2008 through 2010 under 31 U.S.C. § 5321(a)(5), the late payment penalties assessed against him pursuant to 31 U.S.C. § 3717(e)(2), and the fees incurred by the Bureau of the Fiscal Service that are recoverable pursuant to 31 U.S.C. § 3717(e)(1), which amount includes accrued interest to January 10, 2018, plus further interest and statutory additions thereon as allowed by law to the date of payment.

B. Award the United States its costs incurred in connection with this action, along with such other relief as justice requires.

Dated: January 30, 2018

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ *Mary Elizabeth Smith*
MARY ELIZABETH SMITH
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-353-1988 (v)
202-514-9868 (f)
Mary.E.Smith@usdoj.gov

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

FILED

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Brett L. Clemons |
| | 2018 JAN 31 AM 11: 03 |
| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | CLERK US DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA FLORIDA County of Residence of First Listed Defendant Hillsborough County (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Mary Elizabeth Smith, U.S. Dept. of Justice, Tax Division; 555 4th Street, NW, Washington, D.C. 20001; (202) 353-1988; mary.e.smith@usdoj.gov | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | PROPERTY RIGHTS | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | PERSONAL INJURY [ ] 362 Personal Injury - Med. Malpractice [ ] 365 Personal Injury - Product Liability [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 660 Occupational Safety/Health | | [ ] 480 Consumer Credit |
| | [ ] 345 Marine Product Liability | PERSONAL PROPERTY [ ] 370 Other Fraud | [X] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | LABOR | SOCIAL SECURITY | [ ] 810 Selective Service [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | |
| [ ] 195 Contract Product Liability | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 740 Railway Labor Act | FEDERAL TAX SUITS | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
31 U.S.C. § 5321
Brief description of cause:
Reduce FBAR penalty assessments to judgment

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 337,041.32
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD | |
|---|---|---|
| 01/30/2018 | MARY SMITH | Digitally signed by MARY SMITH DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=TAX, cn=MARY SMITH, 0.9.2342.19200300.100.1.1=15001003155226 Date: 2018.01.30 09:31:13 -05'00' |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____